22, 32, 26, Network Data Rooms v. Saulrealism, LLC. May it please the court, good morning. My name is Nicholas Fortuna, represent the appellant, Network Data Room against Saulrealism and Ryan Saul. Network Data Rooms was established by Christopher Kincannon, the owner of financial printing business. He wanted to transform it by using technology to create a virtual data room with the most advanced features in the industry. He didn't want the current market to pass him by. It was moving from hard printing to technology. Mr. Kincannon had no technical knowledge to speak of, and that's clear from the record. He hired people with technical expertise, a board of advisors, to guide him on how to create a virtual data room and how to employ technology to transform his business. He did what we as a society want people to do. He invested in the future, except that the defendant intervened. He was at the point. Well, one of the people he hired to work on this project was Mr. Delorge, right? Yes. So he hired, he was not a member of the board of advisors, and mistakenly hired people with technical expertise and somehow didn't figure out who had good character and who was honest. Well, I understand that. But my problem is this, and I think where you're leading up to is an argument that Mr. Delorge's behavior can't be attributed to Mr. Kincannon and his sons. Correct. He wasn't an agent of NDR. But what else is he? I mean, he's an independent contractor. I get that. Excuse me? For employment law purposes. But this is not a random third party witness who happened to observe things and then lies about what they observed. And you're stuck with them because they're the witness who was there. It's not even an expert hired for purposes of litigation. It's somebody who is the only person from your, it sounds like, from what you've just told us, at the plaintiff, LLC, who was in a position to talk about what actually happened, and he deceived the court about what actually happened. OK, so two things I would say on that. He isn't the only person that could tell the court what actually happened. Because the system that NDR used is not erasable. The system itself is strong evidence. All you need is someone with technical expertise to go in, look at the system. The whole history is there. It's clear from the independent expert appointed by the court. But who could talk about the system at the time? I'm sorry? Who could talk about the system at the time when Saul was employed there? OK, so it was David Delors that could talk about the system while he was employed there at the last piece. But during that time, there were other coders that worked there. I thought at one point Saul was the only coder. He was. He was at one point. David Delors and Ryan Saul were the last two people working there at that time. And they were right at the end. They were approximately 30 to 60 days away from finishing the product. And what you're getting to is, can we go forward on the case without David Delors? When I saw that finding, it made me want to scream that we couldn't go forward without David Delors. That's an improper finding. If the issue is a tainted witness prevents you from going forward to trial, many criminal cases would be wiped out. But this is not that situation. This is a situation where you came in, and I'll assume for purposes of this, that Mr. Concanon had no knowledge that there was fraudulent testimony. But the entire case that was presented to the district court was based on one man's false testimony. No, not all false testimony. The only thing that was false about his testimony was him covering his behind and not doing his job. As far as all the technical issues of concern and what occurred, they were all confirmed by the independent expert that NDR asked the court to appoint after the hearing. The independent expert, for example, didn't have access to all of the different, I forget what the name is. I was going to call it files. OK, so that is an absolute, that's a lie that was perpetrated by the defendant in their brief. It's clear from the reports. He had full administrative access. He could see everything. And when we were about to go to a hearing, right, where he was required to appear and the plaintiff had to pay his expenses, the district judge canceled the hearing and found it's a matter of law that there was a fraud perpetrated on the court. First of all, what happened here, even if you attribute all the worst things that you're saying that Mr. Delorge does, cannot be a fraud on the court as defined by this court and other circuit courts because it has to be repeated, intentional, and in bad faith. NDR did not in any way commit, fall within any of those categories. David Delorge, the only lies he told were to cover up that he didn't do his job. He was in effect, if not in name, a 30 v. 6 witness. He was the person at the corporation who was responsible for all of these events. I'm having trouble understanding why this is not attributable to the company. Because first of all, he's not a 30 v. 6 witness. We had one of the officers testify at the hearing on behalf of the corporation. But not about any of these technical issues. Not on technical issues. But that's what's critical to the case. Well, even though it's an important issue to the case, doesn't mean it's representative of the company itself. If Ford Motor Company calls in a mechanic to talk about how a car runs, doesn't mean they represent the corporation and able to bind the corporation. You need people who know the detail, the granular part of what's going on, to help build your case. And we don't need David Delorge, because we can get any expert, which we've proven, by asking the court to appoint an independent expert. And everything in those reports confirm the contentions of NDR. The district court thought that you couldn't recover certain deleted branches unless you knew the name. And I thought only Mr. Delorge knew those names. So how could the expert know? It wasn't Mr. Delorge that knew those names. It was the defendant who knew those names. I'll give you an example. But it was Mr. Delorge who lied about what the names were that were relevant. No. That's not exactly correct. OK, it was the defendant who lied about the names that are relevant. If you're writing a book, I'll give you an example, or a law review article. For a year, every day, you were going to your Word file, opening that up, doing some work on it, and then saving it on that file. Every day for more than a year, you're going to that file. And then someone asks you what the name of that file is, and you don't know. The defendant in this case put in his affidavit that the name of the file, where the code was saved, was Ryan Development. And it wasn't there. And then when he realized- Was that based on the falsified email? Why would he base his affidavit on a falsified email? Like I said, every single day, it's like he should have known the file like he knows his home address. He went to that file every single day for over a year. So he is relying, he wants to blame David Delorge that he doesn't know where he did his work every day. David Delorge wasn't doing the work on that file. David Delorge never did any work on the code. It was Ryan Saul who did the work. So he wants to blame David Delorge that he didn't know that David Delorge tricked him into thinking that he was going one place when he was going another. Then he testifies, after he puts in that false affidavit, he falsely testifies, oh, I saved it. And he has this whole big story to the Net Roadshow branch. Net Roadshow branch, no such branch exists. None exists. No one ever even heard of it. The independent expert was asked to look for Net Roadshow. Now, this is a guy who should know where this is as well as he knows his home address. So to blame David Delorge that he doesn't know where the file is is incredulous. Thank you, counsel. You're reserved a couple of minutes for rebuttal. Yes. Thank you. Good morning, Your Honors, and may it please the court. My name is Renee Wong, and I represent Saul Realism LLC and individual defendant Ryan Saul. Your Honors, we are here to determine whether or not Judge Schofield had abused her discretion when she issued terminating sanctions, which she found to be the only appropriate remedy in this case, and that there were no lesser sanctions would have been appropriate due to the pervasive fraud upon the court as well as the inconclusive evidence as proffered through these expert reports, essentially finding that there was no clear and convincing evidence that the plaintiff would have any success on the merits. Well, I'm having trouble. Of course, if the issue is the preliminary injunction, I think there's no question that there is no evidence supporting a preliminary injunction. The question is, what about the merits of the lawsuit? It seems to me that the judge's conclusion, putting aside for a moment because at least it seems to me that you've got the better of the case that there was sanctionable conduct, the question of whether the appropriate sanction is dismissal of the entire case seems to me to turn on the judge's view that they could never win this case, which is a judgment that sounds like a summary judgment ruling at a stage before there's been any discovery, before there's been deposition. There was testimony because of the hearing, but there's never been depositions. There's never been documentary evidence. There's never been expert reports except an independent expert who was hired for a limited purpose by the court. But there's all kinds of potential evidence, I suppose, that we don't know whether it exists or doesn't exist. But, Your Honor, there's two parts to that. First, I would like to state that this case has been poisoned from the outset due to the involvement and the lies by David Delorge. It is actually incorporated into the complaint. The allegations here are provably false, as was demonstrated through the false statements in the emails. There was discovery that was conducted in this case. Truly, the only regret is that I was unable to discover this minor discrepancy in an email  As counsel, I prepared an affidavit, a declaration on behalf of the defendant, Ryan Saul, which is done in the normal course of litigation. And he had signed that affidavit attesting to the Ryan development theory based upon the limited information that we had. It was not until cross-examination of David Delorge at the two-day preliminary injunction hearing where it was determined that there was a discrepancy. But still, even in the early stages, it was very difficult to determine why. Why would someone change these dates? And we weren't able to understand the scope of the fraud at that point. And as discovery had progressed and we were able to receive paper discovery, including the emails, including an email that matched this fraudulent email, it was uncovered what the fraud was here. It was, they're not only hiding dates, they're hiding where he's committing code to. And it wasn't until after David Delorge had disavowed himself of this case, it was discovered from subsequent emails that there was not only one project with a repository that was reviewed by the expert. There were an additional 12 projects. And in fact, the email that individual defendant had said he was committing his code to was not one of the projects that the expert had reviewed. So there was a large scheme of fraud that was perpetrated over several months. And the difficulty is, as David Delorge had elected to invoke his Fifth Amendment privilege, is that we were never going to be able to understand the scope of the fraud. Could an expert go back and look at those files that were never reviewed? So the expert, Terry Patterson, who was independent, did look at one project. And then there are also 12 other projects. The difficulty, which is in his reports, is that there are certain logs. There are audit logs and retention logs. And changes can be made. There's certain changes that can be reviewed within 30 days. There's certain changes that can only be reviewed within 90 days. So whether it is strategic or not, this lawsuit was filed almost two or three days after the 90-day mark. So it is possible for an expert to go and look at these logs. The expert has gone and looked at these logs. And Judge Schofield had made a determination that the reports are inconclusive. Another issue is that the report is inconclusive. Would it be theoretically possible for there to be a conclusive expert examination? In other words, suppose, I mean, under the terms of the district court sanctions order, this is a dismissal with prejudice, right? Yes, Your Honor. So suppose the plaintiff were able to come back with an amended complaint that was not based on anything Delorge said, but was based on an independent expert's review that said, I've now looked at all of those other logs. And they also support this theory that Saul never didn't post any work anywhere. Is that something that is conceivable on the record that we've got? On the record that we have, we have that David Delorge has admitted to erasing, at least, or rolling back Defendant Ryan Saul's virtual machine that he uses. We have emails where he has gone and set up new projects, new repositories. At this point, David Delorge has his hands in the cookie jar in every sort of aspect of this. So from that standpoint, I think David Delorge would be, theoretically, just as culpable. And also, there is no independent information other than from David Delorge that it was Ryan Saul that has the code. Of course, it's my hypothetical is hypothetical. And one thing the plaintiff has not done is provide such an amended complaint based on some independent expert testimony. That is correct, Your Honor. And one thing that plaintiff has not done is plaintiff had information that there was a problem with the exhibit at the hearing. The plaintiff did not do any investigation. Plaintiff had noticed that the actual exhibit was fraudulent while the motion for the preliminary injunction was pending. Plaintiff did not withdraw their motion. Plaintiff, at no time, had sought to amend the complaint to change the allegations or sought to add David Delorge as a party. What plaintiff has done is, I suppose, it is the best defense is offense. Plaintiff has filed motions for spoliation against the defendant. Plaintiff and Plaintiff's counsel, respectfully, I don't believe is operating in the same manner a reasonable attorney would in light of the facts of the case and in light of being an officer of the court. Another reason why I think Judge Schofield could have imposed monetary sanctions and attorney's fees but declined not to do so. Well, I'm not sure I understand her rationale for thinking that monetary sanctions were not for taking them off the table, some combination of monetary sanctions for what happened plus trial sanctions to address Delorge's credibility problems and everything that he touched. What she said about the monetary sanctions was something about, what did it say here? That it wouldn't be fair to the company because the burden of it would fall on Concanon. But that's exactly the situation of dismissing the complaint. The effect of it falls on Concanon. The agent. And so I didn't understand the rationale and I don't know if that's something you can speak to. Well, I believe the rationale was she did not believe that monetary sanctions were sufficient. Well, there's a difference between it being sufficient and it being appropriate. So in terms of it being sufficient in the way that plaintiffs had continued to go forward with this case in light of the fraud that had been committed on the court and the facts that were very plainly controverted. Is there any color on what that meant? Because just proceeding with your claim itself doesn't seem to be problematic to me. Is there some other meaning? Judge Schofield was very involved in this case from the onset. We had a two day hearing. Judge Schofield certainly had read every expert report. She herself had presented questions that she had to the expert where the expert had prepared a third report just to answer the questions that she had asked. And the problem with pursuing the claim was that the claim was based upon information solely received from David DeLorge and which was not supported by the independent expert. And although while Judge Schofield had filed the order to show cause and the parties had agreed to take a step back from discovery while we sort the order to show cause out and determine what the appropriate sanctions were, plaintiff then sort of disagreed with that notion and then was pressing forward very aggressively in terms of their claim while we were still trying to determine the scope of the fraud that was on the court. Yeah, I guess the question in my mind is whether both things could be true, that DeLorge committed a fraud that showed what was going on, but also there could be some merit to the claims that further discovery or allowing a case to move forward with some sanctions would help tease out. And I'm not sure that the fraud itself meant that the case was manipulated. I don't think that that was in itself the fraud. The fraud itself is where Judge Schofield made that determination. I would submit that she, in conjunction with the independent expert reports, had made that determination that the case would be futile. And in doing so, she cited Rossback versus Montefiore, which the Second Circuit has subsequently, Judge Park, you have affirmed. The idea being that David DeLorge was the custodian of this evidence. If we were to proceed with the discovery, the jury would learn of DeLorge's fraud and presumptively award victory to Saul. And it would be a waste of judicial resources and a heavy burden on the defendant. I see I'm over my time, unless there's any other questions. Thank you. What the defendants say about the evidence is all made up. It's all speculative. First of all, David DeLorge was not the custodian of the evidence. Microsoft was. It was a separate repository. David DeLorge had nothing to do with that. Is there any evidence that this code that Saul purportedly has commercial value to anyone other than the plaintiff? According to the plaintiff, there are a number of competitors in this marketplace that were financial printers moving to virtual data rooms because the industry, Wall Street, large law firms no longer want the hard copies printed for their roadshows, et cetera. And the features that the plaintiff identified were past what the other players in the market had. I thought the allegation here was not that this was material that Saul was retaining so that he could sell it to someone else, but that it was material that he was holding hostage, that he was trying to get his job back by saying, ha ha, you don't have any of the code, and I can fix that. I thought that was the theory of the complaint. That is the allegation, but I thought I was answering your question whether it has commercial value. That's all. But yeah, I understand. But the allegation in the complaint was not that Saul was holding this material to sell to someone else or to profit from, but that it was material that was being held in order to threaten the company to get Saul's job back. And that threat only comes from DeLorge. DeLorge says, I had a conversation with him where I understand that. But nevertheless, it's only Saul who could have the code. He's the only one who was in control of it. He had it. It was supposed to be a Microsoft system. But it's sort of interesting that, isn't it, that Saul agreed to relief in the form of prohibiting him from giving the code to anyone else? Well, that helps perpetuate his lie that he doesn't have it. He's the only one who had access to the code. You needed multi-authenticate. Excuse me, if he's enjoined from distributing it to anyone, then there's no possibility that Saul can profit from this. And so the question is just, does he Saul was trying to, what he was trying to do, which was to basically punish Kunkanen's company, not to profit elsewhere. Let's say DeLorge is making that up, OK, for a moment. OK, Mr. Kunkanen does not have the code. He could not start the virtual room. It did not. Yeah, I understand that. So the only way that his business can now move forward is by getting that code back, that he spent more than two years of developing in a very unique way. So whatever Mr. DeLorge says about that is irrelevant to the point that Mr. Kunkanen needs the code back. And he cannot do, he cannot operate a virtual. What if Saul destroyed it? I'm sorry? What if Saul destroyed it? What if he erased it in some way that was irrevocable? Well, if he destroyed it, then that's another problem. That would be another kind of case. Yeah, yeah. And I want to point out that everybody's saying, why didn't we amend the complaint? Or rather, the defendant is saying, why didn't we amend the complaint? This was right in the beginning. Judge stayed discovery. We couldn't go forward. We wanted to get depositions. We were asking the judge to move forward to get information. But he never presented the court with some independent evidence that you've created somehow by your own expert, by other people on your board of advisors, or other people associated with the company that could replace the testimony of DeLorge. We could have. What we did, though, is instead, rather than coming in with, again, the plaintiff's side, we asked the court. It was the plaintiff's. You relied on the plaintiff's evidence. The independent experts' reports, which the judge found insufficient. Yeah, but the judge misread them. She either misread them or ignored them. The fact that, just for instance, to say that he only looked at one file, that is not true. It's clearly in his report. He looked at everything. He only found code in one file. And he talks about that. But it's clear from the report, he looked at everything. And he says in his report he had full administrative access. Anything that the defendant said about what happened with the independent expert is not true. They imply that Mr. DeLorge hid things from him. So you're saying that we should conclude that Judge Schofield's findings on these issues were clearly erroneous. That's the standpoint. I would say that they're erroneous. What I think you should find is that it was premature to dismiss the case and make a conclusion that we cannot win. We disagree whether or not that this mounts a fraud on the court, because you had indicated. Well, I'm focused now on the question of the degree of the sanction, not on the sanction, on the question of dismissal, on the question of whether it would be futile to allow this case to go forward. That's what I'm focused on. And part of that determination, what you relied on, was the independent expert's report. Judge Schofield clearly read that report in detail and drew certain conclusions about, factual conclusions about what that report stands for and does not stand for. You are telling us that those conclusions are clearly erroneous. Not only they're erroneous, but the report itself shows that there's a window into looking at these other things. The report says that the branches are not erasable. So if you're saying you only looked at one branch, therefore you're not reliable enough, well, then tell him to look at other branches if that's your position. There's a lot in that report that could. OK, I think I understand your argument. OK. Thank you, counsel. Thank you both. We'll take the case under advisement.